F I L E D
Clerk
District Court
MAR 11 2019
for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| KATRINA DEL GALLEGO DEMAPAN, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>ZENG'S AMERICAN CORP., *et al.*,<br><br>Defendants. | Case No.: 18-cv-00010<br><br>**DECISION AND ORDER DENYING MOTION FOR APPROVAL OF FLSA SETTLEMENT AND MOTION TO FILE SETTLEMENT AGREEMENT UNDER SEAL** |

On February 13, 2019, the parties filed a stipulated motion for approval of a Fair Labor Standards Act ("FLSA") settlement and amended stipulated request to file the settlement agreement under seal or for in camera review only. (ECF No. 44). The motion came on for a hearing on March 5, 2019. For the reasons stated below, the motion for approval of the settlement agreement is DENIED, and the request to file the agreement under seal is DENIED as moot.

Congress passed the Fair Labor Standards Act in 1938 to protect workers from "substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). Therefore, unlike other civil settlements, an agreement to dismiss an FLSA claim must be approved by either the Secretary of Labor or a district court. *Kerzich v. County of Tuolumne*, 335 F. Supp. 3d 1179, 1183 (E.D. Cal. 2018).

1

## I. Request to File Settlement Agreement Under Seal or for in Camera Review

Generally, district courts apply the presumption of public access to judicial records to requests to seal FLSA settlement agreements. *Luo v. Zynga*, 2013 WL 5814763, at *2 (N.D. Cal. 2013). "[S]ince Congress specifically addressed and limited the channels for FLSA settlements, it is not within [the] purview [of the district court] to treat such judicially reviewed agreements as if they were private settlements." *Garcia v. Jambox, Inc.*, 2015 WL 2359502, at *5 (S.D.N.Y. 2015).

A party requesting to seal a record must either demonstrate "compelling reasons" for records attached to a dispositive motion or "good cause" for those attached to a non-dispositive motion. *Luo*, 2013 WL 5814763, at *2. The existence of a confidentiality provision in a settlement agreement is insufficient alone to demonstrate good cause to seal a document. *Id.* at *3; *see also Hens v. Clientlogic Operating Corp.*, 2010 WL 4340919, at *3 (W.D.N.Y. 2010) (collecting cases rejecting confidentiality provisions as justification to seal FLSA settlements). Further, a party's embarrassment, negative publicity, or exposure to further litigation are not good cause to seal. *Luo*, 2013 WL 5814763, at *1. Possible reasons to seal a settlement agreement include protecting trade secrets or information that is privileged. *Id.* Absent some showing that overcomes the presumption of public access, FLSA settlements should not be sealed. *Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 647 (S.D.N.Y. 2011).

Here, the parties' argument for sealing was based on the confidentiality clause in the settlement agreement, as well as potential harm to the Defendants' reputations. Both reasons are insufficient to justify sealing under either the good cause or compelling reason standard. At the hearing on March 5, the Court informed the parties of its intent to deny the request to file the settlement agreement under seal on the evidence before it. Subsequently, the parties informed the Court that they wish to proceed

without the sealing of the settlement agreement. As such, the request to seal the agreement is DENIED AS MOOT.

## II. FLSA Settlement Agreement

The Court now turns to the terms of the settlement agreement before it that was submitted for in camera review. An FLSA settlement should only be approved if (1) there is a bona fide dispute regarding the existence and extent of FLSA liability, and (2) the settlement is a fair and reasonable resolution to that dispute. *Kerzich*, 335 F. Supp. 3d at 1184. The guarantees of the FLSA cannot be contracted away; therefore, no settlement should be approved if there is certainty about the amount owed to the plaintiffs under the FLSA, "because it would shield employers from the full cost of complying with the statute." *Id.*

Once the court has determined that there is a bona fide dispute, it must then determine if the settlement agreement is fair and reasonable. *Id.* While the Ninth Circuit has not established a test for evaluating FLSA settlements, courts often apply the Rule 23 factors used to assess class action settlements. *Id.* Here, the applicable factors include the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of the [plaintiffs] to the proposed settlement. *Id.* Applying a totality of the circumstances approach to the specifics of the case, the "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* at 1185 (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)).

Attorney's fees are part of FLSA settlements and the court must also assess them for reasonableness and fairness, particularly as to the possibility that the fee tainted the reasonableness of the settlement for the plaintiff. *Farthing v. Taher, Inc.*, 2017 WL 5310681, at *2 (C.D. Cal. 2017). In addition, if a settlement agreement includes non-FLSA provisions, those too are subject to review. "[A]greements with broad releases going beyond the FLSA violations are frequently rejected." *Ferreri v. Bask Technology, Inc.,* 2106 WL 6833927, at *5 (S.D. Cal. 2016). An FLSA settlement that includes non-FLSA releases must receive independent consideration in order to survive a presumption of unfairness. *Id.* (citing *Selk*, 159 F. Supp. 3d at 1178).

    a. <u>Bona Fide Dispute</u>

Here, the parties dispute the threshold coverage issue. The FLSA covers employees who were engaged in commerce or the production of goods for commerce (individual coverage) and employees of enterprises engaged in interstate commerce (enterprise coverage). *Zorich v. Long Beach Fire Dep't & Ambulance Serv., Inc.*, 118 F.3d 682, 684 (9th Cir. 1997). The parties disagree as to whether Plaintiffs are covered under either form of coverage. (*See* Stipulated Mot. at 5.) Specifically, regarding enterprise coverage, the parties dispute the method of measuring Defendants' gross receipts. (*Id.*) The Court finds there is a bona fide dispute regarding an element of the FLSA claim and, therefore, settlement is appropriate.

    b. <u>Fairness and Reasonableness</u>

Having determined there is a bona fide dispute, the Court now examines the terms of the settlement agreement for fairness and reasonableness. The settlement amount is fair insofar as it represents full satisfaction of the Plaintiffs' calculation of their unpaid wages and liquidated damages

4

under the FLSA, as well as older non-FLSA unpaid wages of two Plaintiffs not covered by the FLSA. The parties have agreed to an initial payment of $50,000 and 24-month installment plan for the balance of the $200,000 settlement. Individual Defendants have provided security in the form of two mortgages in their leasehold and subleasehold interests in property in Saipan. The terms regarding payment are reasonable and fair to all parties.

The settlement agreement contains a broad release of claims. The parties mutually release each other from all claims of whatever kind or nature, existing in the past, present and future related to the employment of Plaintiffs by Defendants. "Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178 (citation omitted). This release goes far beyond the FLSA and non-FLSA contractual unpaid wage claims asserted in this lawsuit. "When a FLSA settlement provides that opt-in members will receive unpaid wages and related damages, but nothing more, a release provision should be limited to the wage and hour claims at issue." *Id.* at 1178 (citing to *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010). "The employer who obtains a pervasive release receives either nothing (if no claim accrues) or a windfall at the expense of the unlucky employee. In either instance, the employee bears the risk of loss, and the employer always wins—a result that is inequitable and unfair in the circumstance." *Moreno*, 729 F. Supp. 2d at 1352. Here, Plaintiffs are waiving potential discrimination, harassment, and workers compensation claims, among others, all outside the scope of the lawsuit before the Court.

Notwithstanding the above, a broad release may survive a presumption of unfairness if plaintiffs "receive independent consideration, or provide specific evidence that they fully understand

the breadth of the release." *Selk*, 159 F. Supp. 3d at 1178 (citations omitted). The parties submit that two Plaintiffs have received independent consideration in the form of payment for back wages from beyond the look back period of the FLSA. This still leaves two Plaintiffs uncompensated for a broad waiver of their rights. The parties further argue that the mutuality of the release is additional consideration. However, as discussed above, pervasive releases generally place the risk of loss on the employee, not the employer. The Court therefore finds that the release provision of settlement agreement is neither fair or reasonable because it goes beyond the scope of the claims before the Court and releases unrelated claims without independent consideration for all Plaintiffs.

   c. Attorney's Fees

Next, the Court turns to the calculation of attorney's fees. The FLSA has a fee-shifting provision. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") This provision is designed to allow employees access to courts without the burden of litigation costs. *See Kerzich*, 335 F. Supp. 3d at 1188 (listing cases discussing the purpose of the fee-shifting in FLSA cases). Attorney's fees in FLSA cases are typically determined using the lodestar method by calculating hours expended and hourly rates. *Id.* at 1185–86. Contingency fees are permitted; however, the court must still determine the reasonableness of the fee, regardless of any contract between the plaintiffs and their attorney. *See Silva v. Miller*, 307 F. App'x 349, 351–52 (11th Cir. 2009) ("To turn a blind eye to an agreed upon contingency fee in an amount greater than the

amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee.")

Here, Plaintiffs and their attorney entered into a contingency agreement to divide the total settlement, including the attorney's fees paid by Defendants under the fee-shifting provision but exclusive of costs. Plaintiffs' attorney's contingency fee is 33%. In assessing the reasonableness of contingency fees in FLSA settlements, many courts have found it helpful to rely on the Ninth Circuit's 25% benchmark for awarding attorney's fees in common fund cases. *See Kerzich*, 335 F. Supp. 3d at 1186–87; *Alder v. County of Yolo*, 2018 WL 770394, at *2 (E.D. Cal. Jan. 22, 2018); *McKeen-Chaplin v. Provident Savings Bank,* 2018 WL 3474472, at *2 (E.D. Cal. July 19, 2018). There are factors that may warrant an upward departure from this benchmark and courts have found 33% contingency fees reasonable in some FLSA cases. *See McKeen-Chaplin*, 2018 WL 3474472, at *2-3 (approving a 33% contingency fee in a case that had been pending for more than five years during which attorney did not receive payment, including full discovery, two rounds of motions for summary judgment, appeals to both the Ninth Circuit and the Supreme Court, as well as incorporated payment for a separate case); *but see Mar v. Genuine Parts Co.*, 2017 WL 68287, at *3 (E.D. Cal. Jan. 6, 2017) (rejecting a 33.3% contingency fee even though the 94 class members opted into the settlement and Defendants agreed to pay a portion of the payroll taxes).

As shown in Exhibit A to the Settlement Agreement, the contingency fee proposed here would result in attorney's fees totaling $65,529. In comparison, using the lodestar calculation, attorney's fees are $28,150 (112.6 hours x $250/hour), making the contingency fee more than twice the lodestar calculation. "In assessing whether the percentage requested is fair and reasonable, courts generally

consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013). Here, there are several factors warranting an upward departure, including (1) the settlement amount; (2) the proposed payment plan; (3) the risk of non-payment assumed by the attorney; and (4) the quality of the work performed. First, Plaintiffs' attorney obtained a very successful settlement for his clients, recovering 100% of their unpaid wages and 100% liquidated damages for their FLSA claims. Applying the contingency fee to this amount, Plaintiffs still receive 100% of their back wages, as well as 48.5% of their liquidated damages. There is nothing to indicate a conflict of interest exists between Plaintiffs and their attorney to taint the settlement amount. Second, Plaintiffs' recovery is spread out over a two-year period, which extends their attorney's representation until April 2021. Third, the risk of non-payment by the Defendants is shared equally by Plaintiffs and their attorney. If Plaintiffs' attorney was to receive the entirety of the lodestar amount only at the time of settlement, he would receive more than 50% of the initial payment, and his clients alone would assume the risk of default on future payments. Finally, Plaintiffs' attorney diligently researched public records to identify the correct defendants and establish his clients' claims. (*See* ECF No. 24 ¶¶ 3–4.) The Court finds these factors warrant an upward departure under the circumstances, and approves the 33% contingency fee as fair and reasonable.

//

/

/

### III. Conclusion

For the reasons stated above, the Court DENIES the motion for approval of the FLSA settlement agreement because of the overly broad release provision. The parties may file a motion for approval of an amended settlement agreement that addresses the deficiencies identified in this order on or before **March 26, 2019**.

It is so ordered on this 11th day of March, 2019.

RAMONA V. MANGLONA
Chief Judge

9